UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| THOMAS L. GOFF, | Case No. 1:18-cv-00904-JDP |
|---|---|
| Plaintiff, | SCREENING ORDER |
| v. | FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF BE PERMITTED TO PROCEED ON COGNIZABLE CLAIMS AND THAT NON-COGNIZABLE CLAIMS BE DISMISSED WITH LEAVE TO AMEND |
| S. WALTERS, *et al.*, | |
| Defendants. | |
| | OBJECTIONS, IF ANY, DUE IN 14 DAYS |
| | ORDER DIRECTING CLERK OF COURT TO ASSIGN CASE TO DISTRICT JUDGE |
| | ECF No. 1 |

Plaintiff Thomas L. Goff is a state prisoner proceeding without counsel and *in forma pauperis* in this civil rights action brought under 42 U.S.C. § 1983. Plaintiff's complaint, filed July 3, 2018, ECF No. 1, is before the court for screening under 28 U.S.C. § 1915A. The court finds that plaintiff has stated an excessive force claim against S. Walters and a deliberate indifference claim against H. Nsereko. The court will recommend that plaintiff's remaining claims be dismissed without prejudice and that he be granted leave to amend the complaint.

**I.    SCREENING AND PLEADING REQUIREMENTS**

A district court is required to screen a prisoner's complaint seeking relief against a

1

governmental entity, its officer, or its employee. *See* 28 U.S.C. § 1915A(a). The court must identify any cognizable claims and dismiss any portion of a complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1), (2).

A complaint must contain a short and plain statement that plaintiff is entitled to relief, Fed. R. Civ. P. 8(a)(2), and provide "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard does not require detailed allegations, but legal conclusions do not suffice. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the allegations "do not permit the court to infer more than the mere possibility of misconduct," the complaint states no claim. *Id.* at 679. The complaint need not identify "a precise legal theory." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1038 (9th Cir. 2016) (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)). Instead, what plaintiff must state is a "claim"—a set of "allegations that give rise to an enforceable right to relief." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 n.2 (9th Cir. 2006) (en banc) (citations omitted).

The court must construe a pro se litigant's complaint liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). The court may dismiss a pro se litigant's complaint only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hayes v. Idaho Corr. Ctr.*, 849 F.3d 1204, 1208 (9th Cir. 2017) (quoting *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014)).

II. **COMPLAINT**

The court draws the following facts from plaintiff's verified complaint, ECF No. 1, and accepts them as true for purposes of screening. Plaintiff was incarcerated at California Correctional Institution ("CCI") in Tehachepi, California when the constitutional violations occurred. *Id.* at 1. Plaintiff names three defendants, all of whom are employed at CCI: Correctional Officer ("CO") S. Walters, Registered Nurse ("RN") H. Nsereko, and Doctor Nanditha Kongara. *Id.* at 2.

### A. Claim I: Excessive Force

At 6:30 a.m. on December 12, 2017, plaintiff was speaking with another person at the "Rex-deal" building of CCI when a relief officer ordered everybody to get down. *Id.* at 3. Plaintiff lay down immediately and put his hands under his head. *Id.* Though plaintiff complied with the order, CO Walters came to plaintiff's location, stated "I said get the f*ck-down," and sprayed what "seemed to be the entire contents of [an industrial] canister" of MC-09 pepper spray at plaintiff's face. *Id.*

### B. Claim II: Deliberate Indifference

After being pepper-sprayed, plaintiff "was not provided any decontamination by CCI E-yard medical staff." *Id.* at 4. Plaintiff, who was in a holding cage immediately after the incident, informed RN Nsereko that he was "blinded and burning all over from my face to my genitals." *Id.* However, Nsereko did not decontaminate him or facilitate his decontamination. *Id.*

Plaintiff was transferred to another location at 10:30 a.m. on December 12, 2017. *Id.* He "immediately filled out a CDC 7362[1] for treatment at the E-yard medical facility." *Id.* Nonetheless, plaintiff "was not seen until several days later, by that time [his] eyes had closed up and an infection had set in from the corneal [abrasions] in both eyes." *Id.*

Thereafter, plaintiff received more intensive treatment:

> On 12-22-2017 I was seen by Dr. Kongara and it was determined that all CCI treatment was wrong and that I was to be transported to Pasadena's Eye center as a emergency. I was sent to Dr. Tawansy @ Raymond Renaissance Surgery Center . . . . Upon being treated I was returned to CCI where I was told further follow-up exams and treatment would follow. I was bumped [off] the follow-up list several times and then on 01- -2018 [sic] I was sent to the Eye center in Bakersfield where it was diagnosed that my sight was [severely] affected by this incident (claim #1) that caused this condition. The lack of proper medical treatment further [exacerbated] my already bad eye damage. The lack of treatment caused me to further lose my eye sight with pain and suffering.

*Id.*

---

[1] Plaintiff does not define "CDC 7362," but the court infers it is a standardized California Department of Corrections and Rehabilitation form inmates may use to make requests.

**C. Claim III: Retaliation**

Plaintiff submitted an administrative grievance concerning the pepper-spray incident on January 31, 2017.[2] *Id.* at 5. Plaintiff was interviewed about the incident on January 19, 2018 in Lt. Gonzalez's office. *Id.* After the interview, plaintiff "was . . . handcuffed and put into a 3'x3' cage and told [he] was now being sent to AD-seg for [his] claims against the E yard staff in claims 1 & 2." *Id.* Plaintiff spent a week in administrative segregation "with no hearing or classification due-process." *Id.* Plaintiff was then moved to D-yard. *Id.*

Plaintiff spoke with an ombudsman on April 20, 2018 and stated his "issues of claims #1&2 and fears of further reprisal from CCI staff." *Id.* "The next day C.O. Walters came to [plaintiff's] dorm and told [him] that [he] should not have made a issue about getting sprayed." *Id.*

## III. DISCUSSION

Section 1983 allows a private citizen to sue for the deprivation of a right secured by federal law. *See* 42 U.S.C. § 1983; *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 916 (2017). To state a claim under § 1983, a plaintiff must show that a defendant acting under color of state law caused an alleged deprivation of a right secured by federal law. *See* 42 U.S.C. § 1983; *Soo Park v. Thompson*, 851 F.3d 910, 921 (9th Cir. 2017). The plaintiff can satisfy the causation requirement by showing either (1) the defendant's "personal involvement" in the alleged deprivation or (2) a "sufficient causal connection" between the defendant's conduct as a supervisor and the alleged deprivation. *See King v. Cty. of Los Angeles*, 885 F.3d 548, 559 (9th Cir. 2018). As for the second method, the plaintiff can establish a causal connection by showing that the defendant "set[] in motion a series of acts by others, or by knowingly refus[ing] to terminate a series of acts by others," which the defendant "knew or reasonably should have known would cause others to inflict a constitutional injury." *Id.*

The defendants are state prison employees who, accepting plaintiff's allegations as true, can be inferred to have acted under color of state law. *See Paeste v. Gov't of Guam*, 798 F.3d

---

[2] The court infers that this date should be January 31, 2018.

1228, 1238 (9th Cir. 2015) ("[G]enerally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." (quoting *West v. Atkins*, 487 U.S. 42, 50 (1988))).

Plaintiff has also sufficiently alleged facts to satisfy the causation requirement. Plaintiff plausibly alleges that each defendant personally participated in alleged deprivations. CO Walters allegedly pepper-sprayed plaintiff, and RN Nsereko and Doctor Kongara allegedly participated in the deficient medical care.

The remaining question is whether defendants violated federal law. We will analyze each claim in turn.

### A. Claim I: Excessive Force

The Eighth Amendment prohibits those who operate our prisons from using "excessive physical force" against inmates. *Wilkins v. Gaddy*, 559 U.S. 34 (2010) (per curiam); *Hudson v. McMillian*, 503 U.S. 1, 8-9 (1992). For claims arising out of the use of excessive physical force, the core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 7). To facilitate this inquiry, the Supreme Court has articulated five factors to consider: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7.

While the extent of injury suffered by an inmate is one of the factors to be considered in determining whether the use of force is wanton and unnecessary, the absence of serious injury does not end the Eighth Amendment inquiry. *See id.* Whether the alleged wrongdoing is objectively "harmful enough" to establish a constitutional violation is contextual and responsive to contemporary standards of decency. *Id.* at 8 (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Such standards are always violated when prison officials maliciously and sadistically use force to cause harm, whether or not significant injury is evident. *See id.*; *see also Schwenk v. Hartford*, 204 F.3d 1187, 1196 (9th Cir. 2000) (holding no lasting injury required for an act to

qualify as sexual assault because sexual assault was deeply offensive to human dignity); *Felix v. McCarthy*, 939 F.2d 699, 701-02 (9th Cir. 1991) (holding that it is not the degree of injury that makes out a violation of the Eighth Amendment but rather use of official force or authority that is intentional, unjustified, brutal and offensive to human dignity). That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action; the Eighth Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force. *Hudson*, 503 U.S. at 9-10 (concluding that blows directed at inmate which caused bruises, swelling, loosened teeth and a cracked dental plate were not *de minimis*).

Here, plaintiff has stated an excessive force claim against defendant Walters. Plaintiff alleges that, though plaintiff fully complied with an order to "get down," Walters sprayed a large amount of pepper spray into plaintiff's face without good cause. ECF No. 1 at 3.

### B. Claim II: Deliberate Indifference

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) that "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc) (internal quotations omitted)). "This second prong— defendant's response to the need was deliberately indifferent—is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* (citing *McGuckin*, 974 F.2d at 1060). Indifference may be manifest "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* When a prisoner alleges a delay in receiving medical treatment, the delay must have led to further harm

6

for the prisoner to make a claim of deliberate indifference to serious medical needs. *See McGuckin*, 974 F.2d at 1060 (citing *Shapely v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id.* (quoting *Gibson v. County of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." *Id.* at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." *Id.* (citing *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990)). Additionally, a difference of opinion between an inmate and prison medical personnel—or between medical professionals—on appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. *See Toguchi*, 391 F.3d at 1058; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989).

Here, plaintiff has stated a deliberate indifference claim against defendant Nsereko. Plaintiff alleges that, after a large amount of pepper spray had been sprayed in his face, RN Nsereko came to plaintiff's holding cage to personally examine him. ECF No. 1 at 4. Plaintiff informed RN Nsereko that he was "blinded and burning all over from my face to my genitals." *Id.* Despite the examination and the information provided by plaintiff, Nsereko did not decontaminate plaintiff or facilitate plaintiff's decontamination. *Id.*

Plaintiff has not, however, stated a claim against defendant Kongara. Plaintiff alleges that Dr. Kongara treated plaintiff several days after the pepper-spray incident, and that Kongara referred plaintiff to a specialist. *Id.* These allegations do not indicate that Kongara's actions were negligent, let alone deliberately indifferent to plaintiff's medical needs.

**C. Claim III: Retaliation**

The First Amendment guarantees prisoners the right to file prison grievances and to

pursue civil rights litigation in the courts. *See Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). Prisoners may not be retaliated against for exercising their right of access to the courts, *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995), and this protection extends to established prison grievance procedures, *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *abrogated on other grounds by Shaw v. Murphy*, 532 U.S. 223 (2001). Without these constitutional guarantees, "inmates would be left with no viable mechanism to remedy prison injustices." *Rhodes*, 408 F.3d at 567. Because "purely retaliatory actions taken against a prisoner for having exercised [his or her rights to file prison grievances and to pursue civil rights litigation] necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*; *see also Pratt v. Rowland*, 65 F.3d 802, 806 & n.4 (9th Cir. 1995).

In the prison context, a "viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567-68 (footnote omitted). Accordingly, a prisoner suing prison officials under § 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action did not advance legitimate penological goals, such as preserving institutional order and discipline. *See Pratt*, 65 F.3d at 806.

While, to establish a retaliation claim, the prisoner must allege that a defendant's actions caused him some injury, *Resnick v. Hayes*, 213 F.3d 443, 449 (9th Cir. 2000), the prisoner need not demonstrate a total chilling of his First Amendment rights, *see Rhodes*, 408 F.3d at 568-69 (rejecting argument that inmate did not state a claim for relief because he had been able to file inmate grievances and a lawsuit). It is enough that a prisoner's First Amendment rights were chilled. *Id.* at 569 (holding that destruction of an inmate's property and assaults on the inmate were enough to chill the inmate's First Amendment rights and state a retaliation claim, even if the inmate filed grievances and a lawsuit).

Here, plaintiff has failed to state a retaliation claim against any defendant. Plaintiff

alleges that he was placed in administrative segregation for submitting an administrative grievance concerning the pepper-spray incident. While these facts indicate plaintiff may have a retaliation claim, none of the named defendants—Walters,[3] Nsereko, or Kongara—are the persons who retaliated against him by placing him in administrative segregation. To state a retaliation claim, plaintiff must explicitly state who placed him in administrative segregation and allege facts that indicate the reason for their action. Plaintiff will be given leave to amend his complaint to cure this deficiency, if he so chooses.

## IV.     CONCLUSION

The court has screened plaintiff's complaint and finds that plaintiff has stated an excessive force claim against S. Walters and a deliberate indifference claim against H. Nsereko. The court will recommend that plaintiff's remaining claims be dismissed without prejudice and that he be granted leave to amend the complaint.

Should plaintiff choose to amend the complaint, the amended complaint should be brief, Fed. R. Civ. P. 8(a), but must state what each named defendant did that led to the deprivation of plaintiff's constitutional or other federal rights. *See Iqbal*, 556 U.S. at 678; *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002). Plaintiff must set forth "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). There is no *respondeat superior* liability, and each defendant is only liable for his or her own misconduct. *See id.* at 677. Plaintiff must allege that each defendant personally participated in the deprivation of his rights. *Jones*, 297 F.3d at 934 (emphasis added). Plaintiff should note that a short, concise statement of the allegations in chronological order will assist the court in identifying his claims. Plaintiff should name each defendant and explain what happened, describing personal acts by the individual defendant that resulted in the violation of plaintiff's rights. Plaintiff should also describe any harm he suffered from the violation of his rights. Plaintiff should not fundamentally alter his complaint or add unrelated issues. *See* Fed. R. Civ. P.

---

[3] Plaintiff alleges that, after plaintiff was released from administrative segregation, Walters told him "that [plaintiff] should not have made a issue about getting sprayed." ECF No. 1 at 5. This suggests that Walters may have been involved in plaintiff's administrative segregation placement, but if this is the case, plaintiff must state so explicitly.

9

18; *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) ("Unrelated claims against different defendants belong in different suits . . . .").

Any amended complaint will supersede the original complaint, *Lacey v. Maricopa County*, 693 F. 3d 896, 907 n.1 (9th Cir. 2012) (en banc), and it must be complete on its face without reference to the prior, superseded pleading, *see* E.D. Cal. Local Rule 220. Once an amended complaint is filed, the original complaint no longer serves any function in the case. Therefore, in an amended complaint, as in an original complaint, each claim and the involvement of each defendant must be sufficiently alleged. The amended complaint should be titled "First Amended Complaint," refer to the appropriate case number, and be an original signed under penalty of perjury.

## V. ORDER

The clerk of court is directed to assign this case to a district judge, who will preside over this case. The undersigned will remain as the magistrate judge assigned to the case.

## VI. RECOMMENDATIONS

Under 28 U.S.C. § 636(c)(1), all parties named in a civil action must consent to a magistrate judge's jurisdiction before that jurisdiction vests for "dispositive decisions." *Williams v. King*, 875 F.3d 500, 504 (9th Cir. 2017). No defendant has appeared or consented to a magistrate judge's jurisdiction, so any dismissal of a claim requires an order from a district judge. *Id.* Thus, the undersigned submits the following findings and recommendations to a United States District Judge under 28 U.S.C. § 636(b)(l):

1. Plaintiff states an excessive force claim against S. Walters.
2. Plaintiff states a deliberate indifference claim against H. Nsereko.
3. Plaintiff's remaining claims and all other defendants should be dismissed without prejudice, and plaintiff should be granted leave to amend the complaint.
4. If plaintiff files an amended complaint, defendants Walters and Nsereko should not be required to respond until the court screens the amended complaint.

Within fourteen days of service of these findings and recommendations, plaintiff may file written objections with the court. If plaintiff files such objections, he should do so in a document

captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *See Wilkerson v. Wheeler*, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   March 29, 2019

UNITED STATES MAGISTRATE JUDGE

No. 203.